# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:18-cr-59-MOC-DCK-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| GREGORY CLIFTON HOOKS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 32). Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic and because his mother has been diagnosed with terminal cancer. The Government has responded in opposition to the motion.

## I.     BACKGROUND

On March 1, 2018, Defendant pleaded guilty pursuant to a plea agreement to one count of conspiracy to possession with the intent to distribute heroin, under 21 U.S.C. § 846, and to one count of conspiracy to commit money laundering, under 18 U.S.C. § 1956(a)(1)(B)(i) and (h). On August 14, 2018, this Court sentenced Defendant to 80 months imprisonment on each count run concurrently.

Defendant is currently incarcerated at Montgomery FPC in Montgomery, Alabama. As of February 2, 2021, he has served 57.5% of his full term and 67.4% of his statutory term, with a projected release date of December 9, 2022, and a Home Detention Eligibility Date of June 9, 2022. As of February 4, 2021, Montgomery FPC had 4 inmates and 14 staff members who have tested positive for COVID-19. See Federal Bureau of Prisons, COVID-19 Cases, at

https://www.bop.gov/coronavirus/ (accessed Feb. 4, 2021).  As of February 4, 2021, BOP reported that zero inmates have died, and 86 inmates (including Defendant) have recovered from COVID-19 at Montgomery FPC.  Id.  Currently, 14 staff members have tested positive for COVID; zero staff members have died and two staff members have recovered.  Id.

This is Defendant's second motion for compassionate release.  He submitted his first request to the Montgomery FPC warden on May 19, 2020, based on his hypertension and the risk of COVID-19.   The warden denied Defendant's request for compassionate release on May 28, 2020.  On August 5, 2020, Defendant filed a pro se motion for compassionate relief with this Court.  On September 11, 2020, this Court denied Defendant's motion.

Defendant tested positive for COVID-19 on January 7, 2021.  He was in COVID-19 isolation from January 7, 2021, through January 19, 2021.  Defendant's COVID-19 was resolved by January 19, 2021, and he was released to the general population.  Defendant filed the pending motion on January 7, 2021, (the same day he tested positive for COVID-19), again based on the threat of COVID-19, with the added circumstance that his mother was diagnosed with terminal cancer in September 2020, and he would like to be released to be her caregiver.  Defendant has provided a proposed release plan to live with his mother in Gastonia, North Carolina, and he asserts that he has two jobs lined up when he is released and that he has access to health care at two medical facilities in Gaston County, North Carolina.

## II.    DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction"

-2-

and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer,

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been

-4-

identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison.[2] Defendant first cites his obesity and hypertension as conditions that make him more susceptible to complications from COVID-19.[3] Defendant may be suffering from serious conditions that could make him susceptible to serious complications from contracting COVID-19. However, as noted, since filing his first motion, Defendant tested positive for COVID-19, but he has recovered. Defendant was involved in a wide-ranging heroin drug trafficking conspiracy in North Carolina and South Carolina. Defendant conspired with Mexican drug traffickers to bring heroin into this district, and he also conspired to commit money laundering and wired drug proceeds back to his co-conspirators in Mexico. To allow Defendant to be released now, having served only a little more than half of his sentence, would not take into account the serious nature

---

[2] To the extent that Defendant seeks to be released to home confinement, this Court has no authority to direct BOP to place a defendant in home confinement. Rather, such designation decisions are committed solely to BOP's discretion. See 18 U.S.C. § 3621(b); United States v. Voda, 994 F.2d 149, 151–52 (5th Cir. 1993).

[3] In its opposition brief, the Government asserts that Defendant's BOP medical records reflect that Defendant is just shy of being medically obese and that, according to CDC guidelines, Defendant is not at heightened risk due to his weight.

of his crimes. Moreover, the Court is concerned that release could result in potential danger to others, given Defendant's lengthy criminal history, which includes convictions for felony possession of a Schedule II controlled substance, burglary, simple possession of a controlled substance, and attempted possession of a firearm by a convicted felon. Additionally, although Defendant is considered low risk for recidivism, he has been diagnosed with having a severe opioid disorder, which makes him highly susceptible to relapse were he to be released from prison at this time.

The Court also agrees with the Government's assertion that Defendant may be more at risk of re-infection with COVID-19 in Gaston County, North Carolina than in prison. As noted, Defendant's release plan is to move in with his mother in her house in Gastonia, North Carolina, and he claims he has lined up work. The Government has asserted in its opposition brief that, as of February 3, 2021, however, there were 21,577 reported COVID-19 cases and 326 COVID-19 deaths in Gaston County, North Carolina. There were no new reported cases or deaths on February 3, 2021. The numbers of COVID-19 infections in Montgomery FCP are substantially lower. Thus, Defendant has not established that he would be less vulnerable to COVID-19 if he were released to the general population in Gastonia.

Finally, to the extent that Defendant seeks to be released early to take care of his ill mother, Defendant's mother's terminal cancer diagnosis, while tragic, does not constitute an "extraordinary and compelling" factor for compassionate release. See United States v. Siberio-Rivera, 2020 WL 7353367, at *1 (E.D. Pa. Dec. 15, 2020) (stating that wanting to be released early to care for elderly or ill parents does not rise to the level of an extraordinary and compelling circumstance warranting release). Furthermore, Defendant has not produced

-6-

evidence that he is the only possible caregiver for his mother, as other family members live in the Gastonia area, and she is also in hospice care.  Accord United States v. Ingram, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2020) (denying a compassionate release motion that was premised on an inmate's desire to care for his 93-year-old mother, who was in hospice and had other relatives to care for her, stating, "Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

In sum, for all these reasons, the Court denies Defendant's motion.  This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A).  Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A).  Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 32), is **DENIED**.

Signed: March 2, 2021

Max O. Cogburn Jr.
United States District Judge

-7-